Filed 3/27/26  Vanesyan v. Aperian CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| LARISA VANESYAN, | B344655 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BD541888) |
| v. | |
| MAXIM APERIAN, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jeffrey W. Korn, Judge Pro Tempore.  Affirmed.

Law Offices of Cynthia A. de Petris and Cynthia A. de Petris for Defendant and Appellant.

No appearance by Plaintiff and Respondent.

# I.  INTRODUCTION

Maxim Aperian (Maxim) appeals from an order denying his request for order (RFO)[1] terminating a provision of an earlier judgment of dissolution that assigned his pension plan and account plan to his former wife Larisa Vanesyan (Larisa).  We affirm.

# II.  BACKGROUND

## A.  *Dissolution Judgment*

Maxim and Larisa were married on October 18, 1996, and had two children together.  On March 28, 2011, Larisa petitioned for divorce.  On August 23, 2013, the trial court entered a judgment of dissolution.  Among other things, the trial court found that Maxim had absconded with $100,000 in community property funds and refused an earlier order to repay the absconded amount plus interest.

At the time of the dissolution, Maxim had interests in a motion picture industry individual account plan and motion picture industry pension plan (the Plans).  The trial court awarded Larisa the total value of the Plans.  The court explained that "[t]he total value of the two plans is $125,143 plus or minus changes in the value after the date of separation.  [Larisa] is

---

[1]     "In family law proceedings under the Family Code, the term 'request for order' (RFO) 'has the same meaning as the terms "motion" or "notice of motion" when they are used in the Code of Civil Procedure.'  ([Cal.] Rules of Court, rule 5.92(a)(1)(A).)"  (*In re Marriage of DeWolfe* (2023) 93 Cal.App.5th 906, 908, fn. 3.)

awarded one-half interest therein. Her share has a value of $62,571.50. In order to restore [Larisa] to the position she would have been had [Maxim] not absconded with the $100,000, under Family Code[2] [sections ] 1101[, subdivision ](g) and . . . 721, [Larisa] is hereby awarded the remaining one-half interest in [Maxim's] [Plans] plus or minus any accruals thereon. [Larisa] is therefore awarded 100[ percent] of the interest in the [Plans]. The [c]ourt finds that if [Larisa] liquidated these retirement[ ] accounts, net after taxes and penalties she would release [*sic*] close to 50[ percent] of the gross value. This would net her approximately $62,571.50 of which is her community interest." The court retained jurisdiction to make necessary qualified domestic relations orders with respect to the Plans.

B.    *Payment from Plans*

In 2014 and 2015, the Plans' administrators distributed to Larisa the entire balance of the Plans, $86,516.13.

C.    *June 18, 2024, RFO*

On June 18, 2024, Maxim filed a request for order "permanently terminating the assignment of [the Plans] to Larisa . . . in the Judgment dated 8/23/2013 and return to [him] based on satisfaction of Judgment . . . ." Maxim asserted that the $86,516.13 that Larisa had already received exceeded her one-half interest in the Plans, which was $62,571.50.

Larisa opposed the RFO. Maxim filed a reply.

---

2       Further statutory references are to the Family Code.

3

On December 17, 2024, the trial court heard argument and took the matter under submission. On February 7, 2025, the trial court denied the RFO. Maxim timely appealed.

## III. DISCUSSION

Maxim contends the trial court misinterpreted the judgment, asserting the judgment was "satisfied," and the compensatory remedy pursuant to section 1101, subdivision (g) was fulfilled, when Larisa received more than her one-half interest in the Plans.

We independently interpret the language of a judgment. (See *Southern Pacific Pipe Lines, Inc. v. State Bd. of Equalization* (1993) 14 Cal.App.4th 42, 49 ["'The meaning and effect of a judgment is determined according to the rules governing the interpretation of writings generally'"].)

At bottom, Maxim's argument is premised on his assertion that the judgment of dissolution awarded Larisa a "$62,571.50 half interest" in the Plans. That premise, however, is based on a misinterpretation of the plain language of the judgment of dissolution, which expressly awarded Larisa the entirety of the Plans, which included both her half interest in the Plans, namely, $62,571.50, *and* Maxim's half interest in the Plans "plus or minus any accruals" as a sanction for his absconding with $100,000 in community property.

Maxim additionally contends that "once a compensatory objective has been achieved, further enforcement should cease" and that Larisa received a "windfall" when she received $86,516.13 from the Plans. He provides no legal authority for his proposition. Nor does he explain how Larisa received a

4

"windfall." As we explain above, the judgment of dissolution awarded Larisa the entirety of the Plans, which included her half interest and, as a remedy for Maxim's breach of his fiduciary duty, Maxim's half interest. To the extent Maxim challenges the dissolution judgment as providing an "impermissible windfall" to Larisa, we reject the argument as forfeited by Maxim's failure to timely appeal from the judgment. (See *K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 881 ["'[T]he timely filing of an appropriate notice of appeal or its legal equivalent is an absolute prerequisite to the exercise of appellate jurisdiction'"]; *In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 761, fn. 8 ["California follows a 'one shot' rule under which, if an order is appealable, appeal must be taken or the right to appellate review is forfeited"]; see also *In re Marriage of Thorne & Raccina* (2012) 203 Cal.App.4th 492, 499 [generally, "marital property rights and obligations adjudicated by a final judgment cannot be upset by subsequent efforts to 'modify' the judgment"].) Even if not forfeited, the argument is meritless. "Remedies for breach of the fiduciary duty by one spouse, including those set out in Sections 721 and 1100, shall include, *but not be limited to*, an award to the other spouse of 50 percent, or an amount equal to 50 percent, of any asset undisclosed or transferred in breach of the fiduciary duty . . . ." (§ 1101, subd. (g), italics added; see *In re Marriage of Gutierrez* (2020) 48 Cal.App.5th 877, 882 [sanctions orders under § 1101, subd. (g) "are committed to the trial court's discretion"].) Accordingly, the trial court did not err by denying the RFO.

## IV.   DISPOSITION

The order denying the RFO is affirmed.  No costs are awarded on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM (D.), J.

We concur:

MOOR, Acting P. J.

KUMAR, J.*

---

* Retired judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.